**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

SGO CORPORATION LIMITED,

                Defendant.

Case No. 24-cr-20343 (KMW)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**SGO CORPORATION LIMITED'S MOTION FOR BILL OF PARTICULARS**

SGO Corporation Limited ("SGO") respectfully submits this memorandum of law in further support of its Motion for Bill of Particulars (DE 347, the "Motion" or "Mot."), and in reply to the government's memorandum of law in opposition to the Motion (DE 356, the "Opposition" or "Opp.").[1]

**PRELIMINARY STATEMENT**

For the first time in over a decade, the government has charged a corporation with violating the FCPA, and it has done so by relying on mutually exclusive statutes set out in a charging document that is as opaque as it is unsupported. Apparently preferring that SGO head to trial with as little information as possible, the government now opposes SGO's request for the particulars needed to prepare its defense at trial. Citing the Court's prior denial of defendant Roger Piñate's motion for bill of particulars, the government suggests the Court should do the same as to SGO. But SGO is differently situated than an individual defendant; it is a foreign corporate entity that

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in the Motion.

the government has conflictingly alleged to be both a "domestic concern" and a "person other than a domestic concern."

While the opposition spends considerable time on the government's ability to allege these conflicting theories, it wholly ignores the import of doing so and the reason SGO requires particulars to avoid surprise at trial. Specifically, without more, SGO is left to guess whether the government intends to prove that SGO was a person other than a domestic concern whose agents violated the FCPA while in the territory of the United States or that SGO was itself a domestic concern. As a corporate entity with countless employees and agents who act for it, SGO must also guess which of those employees or agents the government believes acted with authority when violating the FCPA and how they did so to benefit SGO. The government's competing theories implicate different evidence, different witnesses, and raise different legal questions that SGO must be permitted to evaluate, challenge, and prepare a defense against well in advance of trial.

The Constitution protects defendants, including corporate defendants like SGO—a going concern with employees who are entirely unconnected to the charges at issue and whose livelihoods would be destroyed as a result of a criminal conviction of their employer—from having to defend against such opaque charges. The government should not be entitled to leave SGO to speculate as to how it can defend itself at trial. SGO's Motion for Bill of Particulars should therefore be granted in its entirety.

## ARGUMENT

I.    **THE SUPERSEDING INDICTMENT DOES NOT REASONABLY APPRISE SGO OF THE FACTS NECESSARY TO PREPARE ITS DEFENSE TO THE FCPA CONSPIRACY CHARGE.**

A.    **The Government Fails to Identify the Universe of Agents It Alleges Acted on SGO's Behalf and the Nature of the Alleged Agency Relationships.**

At trial, the government must show that an SGO agent acted within the scope of their employment or on behalf of SGO (as opposed to some other Smartmatic entity) at the time they engaged in conduct violating the FCPA.  *See* Mot. at 10–11.  Moreover, to the extent that the government contends that SGO was a person other than a "domestic concern," it must also show that the relevant conduct of those agents occurred in the territory of the United States.  *See id*. at 11–12.  Opposing SGO's request, the government lists six "individuals or entities" it claims "acted on SGO's behalf": Mr. Piñate, Mr. Vasquez, "Smartmatic International," "SMMT USA," "SMMT Philippines," and "SMMT-TIM 2016."  Opp. at 12.  But the government refuses to confirm whether that list is the exhaustive list of agents whose conduct the government will claim binds SGO, and SGO is therefore left to guess as to whether there are any other employees or agents whose conduct the government will claim can be imputed to SGO at trial.

Nor does the government explain whether any of the Superseding Indictment's alleged agents were acting with authorization by SGO or with an intent to benefit SGO.  Instead, the government appears to believe that vague descriptions of revenue passed on from entities other than SGO and reflected on SGO's financial statements—knowingly or otherwise—is sufficient.  Opp. at 12 (quoting DE 264).  But SGO is entitled to more to adequately prepare its defense given the specific criminal intent required here.  A company "may be penalized for" the acts of its employees or agents only if they "acted within the scope" of their employment ***with that entity***.  *See* Mot. at 9 (quoting *United States v. Ridglea State Bank*, 357 F.2d 495, 497–98 (5th Cir. 1966))

(citing Restatement (Second) of Agency § 217D, comment d, and § 235 (1958)).  Here, the government cannot be permitted to hide until trial the facts it alleges connected the conduct of SGO's alleged "agents" to the United States and to any benefit to SGO.

The government's claim that "these are not proper requests" and are, instead, efforts "to compel the government to interpret its evidence, connect evidentiary dots, and disclose legal theories," Opp. at 12 (citing *United States v. Bickers*, No. 1:18-CR-98, 2019 WL 7559292, at *14 (N.D. Ga. Sept. 17, 2019)), is meritless.  The case the government relies on is inapposite.  In *Bickers*, the court found that an indictment was sufficient because it contained detailed allegations about the defendant's (an individual) "alleged participation in a scheme to defraud" and because the government committed to "continu[ing] to provide to defense counsel the names of additional unindicted co-conspirators as necessary."  *Bickers*, 2019 WL 7559292, at *8–9.  Here, the Superseding Indictment does not make clear how SGO allegedly participated in the charged FCPA scheme, and the government expressly told SGO that it was "*not* undertaking an obligation to notify [SGO] of changes" to its "list of co-conspirators and others related to the [charged] conspiracy . . . in advance of trial."  Mot., Exhibit B at 2 (emphasis added).  While *Bickers* involved an individual defendant with knowledge and awareness of her own conduct, SGO is in the dark as to the universe of conduct that the government intends to impute to SGO, and it is entitled to dispute at trial that any alleged agents were working for SGO the time of the alleged acts.  Seeking these details is not, as the government contends, an "attempt[] to compel the government to interpret its evidence" or "disclose legal theories," Opp. at 12, but is simply a request for the minimum set of facts sufficient for SGO to understand the basis of the charges it faces.

4

**B.      The Government Fails to Identify the Universe of Territorial Acts It Alleges Relate to the Charged Conduct.**

In the entire Superseding Indictment, there are only *two* specific allegations about conduct that the government claims occurred in the United States—WhatsApp messages exchanged between Mr. Piñate and Mr. Vasquez, allegedly while in the United States on August 15, 2016. Indeed, in its Opposition, the government cites these messages as providing its territorial basis for the charged conspiracy.  Opp. at 14.  Though clearly central to the Superseding Indictment's allegations, the government refuses to clarify whether Mr. Piñate and Mr. Vasquez were acting as agents of SGO when they exchanged those messages or provide any basis for its allegation as to Piñate and Vasquez's whereabouts when the messages were sent.  *See* Opp. at 13–14; Mot. at 11–12.

The government also notes in its Opposition that the Superseding Indictment cites a personal email arranging an alleged meeting between Mr. Vasquez and "Individual 1" in the Southern District of Florida.  *Id.* at 14.  But this attempt to supplement territorial conduct raises more questions than it answers—the government does not allege whether the meeting ever took place or suggest how it was ever connected to the charged conspiracy.  Again, in order to avoid unfair surprise at trial, SGO is entitled to its requested particulars concerning the full scope of allegedly territorial conduct the government intends to impute to the company.

**C.      The Government's Production of Discovery Fails to Cure the Superseding Indictment's Deficiencies.**

The government argues that its Rule 16 productions obviate the need to provide SGO with any of the requested particulars.  *See* Opp. at 8.  On the contrary, the volume of discovery serves only to obfuscate the charges against SGO and weighs in favor of *granting* the Motion for Bill of Particulars.  *See* Mot. at 6 (citing *United States v. Pulliam*, No. 3:21-cr-00156, 2023 WL 8456105,

at *2 (D. Conn. Dec. 6, 2023)) ("[E]xtremely voluminous discovery can . . . weigh in favor of a bill of particulars as a mechanism for cutting through the materials.").

As noted in the Motion, the government has produced an immense volume of discovery—millions of documents, comprising over two terabytes of data—including complex international bank records, contracts, loan documents, financial records, audio and video files, and multiple electronic devices. Mot. at 4. The government has left SGO with the impossible task of parsing through a mountain of evidence, only to guess as to which materials relate to conduct that the government intends to impute to SGO.

In its Opposition, the government dismisses this concern, claiming that it has satisfied its obligations because it has provided a "description of the discovery with associated bates numbers to easily and quickly search electronically for the materials." Opp. at 9. But the government's generic descriptions of the millions of pages of produced discovery (e.g. "Documents from M. and S. Afans," "Documents from Standard Chartered Bank," "Philippine Law Documents," "Documents from Vasquez," "Property receipts," "Vasquez WhatsApp") do not shed any light as to which materials are relevant to the charges against SGO.

The government also points to the existence of the "Summary of Bribery Scheme Flow Chart" in its 2023 complaint against defendant Juan Andres Donato Bautista and claims that that chart "show[s] the payment of bribes by SGO's subsidiaries, with detailed transaction amounts and dates, through Vendor A to defendant Bautista." *See* Opp. at 9. The government attempts to equate this flow chart to the chart discussed in *United States v. Phillips*, No. 2:14-CR-76, 2015 WL 13662851, at *4 (E.D. Tenn. Sept. 25, 2015), where defendant was provided with discovery including "detailed visual aids which track the flow of investor funds to ghost vendor accounts, bank accounts, and other diverted ends." Government's Resp. in Opp'n to Mot. to Dismiss

Indictment or for Bill of Particulars at 15, *United States v. Phillips*, 2:14-CR-76, Sept. 18, 2025 (DE 292). But the flow chart that the government references here (created years before SGO was indicted) does not mention SGO or any other Smartmatic affiliate (*see* DE 1 at 31)—and therefore does not identify which supposed transfers underly the charges against SGO.

Finally, the government wrote: "Lastly, ROIs produced in discovery summarize relevant financial transactions for SGO. *See*, *e.g.*, ROI 3, Bates No. HSI_ROI_0000000008." Opp. at 9. Like SGO, it appears the government finds this voluminous discovery similarly confounding: the government has not produced any document with such Bates number to SGO. To the extent the government meant to identify a document bearing Bates number *DOJ*_ROI_0000000008, that document references various wire transfers, but none of those wire transfers mention SGO or relate to a bank account that the government alleges was controlled by SGO.

## II. THE SUPERSEDING INDICTMENT DOES NOT REASONABLY APPRISE SGO OF THE FACTS NECESSARY TO PREPARE ITS DEFENSE TO THE MONEY LAUNDERING CHARGES.

As noted in the Motion, the Superseding Indictment does not identify (a) with respect to the money laundering conspiracy charge (Count 3), which transactions it alleges involved property "obtained from a criminal offense" and who it alleges was acting on behalf of SGO in connection with those transactions; and (b) with respect to the three substantive counts of promotional money laundering (Counts 4–6), whether the government alleges that the charges are for completed or attempted money laundering. Mot. at 12–13.

As to the money laundering conspiracy charge, the government writes that: "[t]he Superseding Indictment alleges that defendants Piñate, Vasquez, 'together with others, directed and caused Vendor A-Executive [whose identity was provided to defendant SGO] . . . to transfer and to attempt to transfer approximately $1,000,000 in bribe payments to and for the benefit of Juan Andres Donato Bautista.'" Opp. at 15 (citing DE 264 at 11). Again, the government has

7

provided no insight as to how it alleges *SGO* was involved in those alleged fraudulent transaction, or which specific transactions involved alleged "criminally obtained proceeds," as required under the statute.

Likewise, the government refuses to clarify whether it has charged SGO with a completed or attempted money laundering offense. The government does not deny that, as noted in SGO's Motion, the allegedly criminally obtained proceeds were all "returned to sender, and not retained, by the Singapore bank account alleged to be associated with defendant Juan Andres Donato Bautista." Mot. at 17, 23. In other words, the government does not allege that any funds were ultimately deposited or maintained in that bank account. Therefore, SGO is left to presume that it has been charged with attempted money laundering because there are no allegations that money allegedly linked to SGO in fact made it into the hands of a foreign official. However, the government refuses to confirm this understanding and instead merely points SGO to "bank records of wire transfers in Bautista's bank account and related accounts in the Philippines," none of which involve SGO; to the three alleged wire transfers from a non-SGO bank account to the Singapore bank account; and to a flow chart that not only predates SGO's indictment but also does not reference SGO. *See* Opp. at 15 (citing DE 1 at 31). This charge first, figure it out later approach leaves both SGO and the Court out to sea and vulnerable to unfair surprise at trial. As this Court held in denying Mr. Piñate's motion for bill of particulars, it is a defendant's "constitutional right . . . to know the offense with which he is charged." *See* DE 68 at 16 (citing *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981)).

### CONCLUSION

SGO's Motion is tailored specifically to seek those facts necessary to understand the charges against it in order to prepare its defense and avoid unfair surprise at trial. Its Motion should be granted in its entirety. At the very minimum, the government should be ordered to direct

SGO to the particular discovery evidencing (or to produce, to the extent the discovery is not already produced) (1) the complete list of persons and/or entities whose conduct the government intends to attribute to SGO in connection with the FCPA conspiracy charge and the specific acts that the government alleges were taken by those agents on behalf of SGO or to benefit SGO (Count 1); (2) to the extent the government intends to argue that SGO is a person other than a "domestic concern," the scope of conduct that the government claims occurred in the United States in furtherance of the charged conspiracy (Count 1); (3) who it alleges was acting on SGO's behalf in connection with the purported money laundering conspiracy (Count 3); and (4) how it alleges SGO was involved in the three transactions underlying the promotional money laundering counts (Counts 4–6), and whether the government alleges that the transactions referenced in Counts 4–6 constituted attempted or completed money laundering transactions.

Date:   March 27, 2026

**ALSTON & BIRD LLP**

s/ *Christopher C. Marquardt*
Jenny Kramer (admitted pro hac vice)
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9420
Jenny.Kramer@alston.com

Christopher C. Marquardt
1201 West Peachtree Street, NE
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Chris.Marquardt@alston.com

*Counsel for SGO Corporation Limited*

## CERTIFICATE OF SERVICE

I CERTIFY that on March 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Christopher C. Marquardt*
Christopher C. Marquardt
ALSTON & BIRD LLP
