UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JORGE MIGUEL VASQUEZ,

      Defendant.

_____/

### MOTION TO COMPEL MR. VASQUEZ'S STATEMENTS

Jorge Vasquez respectfully requests that the Court order the Government to produce the substance of any statements made by Mr. Vasquez, any documentation related to those statements, along with any MLAT application containing a statement made by "CS-1" (now identified as Mr. Vasquez). Of course, Federal Rule of Criminal Procedure Rule 16(a)(1)(A) already requires this disclosure. However, undersigned counsel has become aware of two telephonic interviews between Mr. Vasquez and Special Agent Cole Almeida that were not previously disclosed by the Government or accounted for with any notes or written reports, as well as statements attributed to Mr. Vasquez in applications for MLATs that were not otherwise documented or disclosed, and which directly contradict disclosed statements. Therefore, Mr. Vasquez requests a hearing to determine the extent of the non-disclosure and the appropriate remedy beyond full disclosure.

**Relevant Facts**

In April of 2019, law enforcement stopped Mr. Vasquez, a United States citizen, at the San Francisco International Airport upon his entry into the United States and seized certain of his electronic devices. In October of 2019, law enforcement again stopped Mr. Vasquez at Miami International Airport and served him with a target letter. Following receipt of the letter, Mr. Vasquez, represented by his then-counsel Frank Rubino, agreed to meet with the Government and proffer information.

Through discovery, the Government provided documentation of five interactions between the Government and Mr. Vasquez:

1. An incident report documenting the seizure of electronic media pursuant to a border search conducted on <u>April 5, 2019</u>. There are no statements attributed to Mr. Vasquez in this report.

2. A report of investigation documenting the secondary inspection of Mr. Vasquez on <u>October 21, 2019</u>. There are statements attributed to Mr. Vasquez made during a brief interview without counsel.

3. A report of investigation documenting a proffer interview with Mr. Vasquez on <u>October 30, 2019</u>, in the presence of counsel. This report includes a lengthy account of statements allegedly made during this proffer interview. This report references a subsequent telephonic interview on <u>November 19, 2019</u>, without providing details of the statements made in that interview.

2

4. A report of investigation documenting a proffer interview with Mr. Vasquez on February 3, 2020, in the presence of counsel. This report includes a lengthy account of statements allegedly made during this proffer interview.

5. A report of investigation documenting a proffer interview with Mr. Vasquez on October 14, 2020, in the presence of counsel. This report includes a lengthy account of statements allegedly made during this proffer interview.

In March of 2021, through Mr. Rubino, Mr. Vasquez informed the Government that he no longer believed cooperation was in his best interest. There were no additional conversations between Mr. Vasquez and the Government.

Undersigned counsel entered a notice of appearance on July 1, 2025. Mr. Rubino provided access to all discovery produced by the Government. The discovery included the five reports listed above, but there were no other reports or notices documenting statements made by Mr. Vasquez to Government agents. Frank Rubino passed away on March 1, 2026, and undersigned counsel is now in possession of Mr. Rubino's file.

**The Missing Discovery**

Through review of the discovery, conversations with Mr. Vasquez, and now a review of Mr. Rubino's file, undersigned counsel believes that Mr. Vasquez was interviewed by Special Agent Almeida on at least two additional occasions, while Mr. Vasquez was represented by counsel, that are not documented in the five reports enumerated above or otherwise noticed in the discovery.  Further, contrary to the Government's prior assertion that Mr. Vasquez's statements were not used to further

investigative steps, undersigned counsel has identified statements attributed to Mr. Vasquez in MLAT applications that are not documented anywhere else and which directly conflict with statements attributed to Mr. Vasquez in the Reports of Investigation.

First, agents conducted a telephonic interview with Mr. Vasquez on November 21, 2019. The existence of this interview is noted in the Report of Investigation related to the interview on October 30, 2019. In the October 30, 2019, report, agents write: "NOTE: On November 21, 2019 during a subsequent telephonic interview, VASQUEZ detailed the amounts of the previously discussed bribe payments, referenced as Batch #1 – 4." There is no other documentation relating to the telephonic interview on November 21, 2019, or the statements made by Mr. Vasquez during the telephonic interview. Mr. Vasquez recalls a lengthy telephonic interview with Agent Almeida that took place while Mr. Vasquez was at Mr. Rubino's office. While Mr. Rubino was present for some of the conversation, Mr. Vasquez recalls that Mr. Rubino was not in the room for the entirety of the interview. Mr. Vasquez recalls subjects discussed other than the amounts of previously described payments.[1]

Second, on August 25, 2020, Agent Almeida called Mr. Vasquez's home phone and asked if they could interview Mr. Vasquez over the phone. Mr. Vasquez requested that the Agent notify Mr. Rubino of the request. After Agent Almeida told Mr.

---

[1]     As the Court knows from prior filings and the Government's concessions, Mr. Vasquez never used the term "bribe" or "kickback" as the payment is characterized in the Report of Investigation.

Vasquez that Mr. Rubino was notified, he originated a call using WhatsApp. Mr. Rubino was not on the call, which lasted nearly 23 minutes. Mr. Vasquez and Agent Almeida discussed the substance of the investigation during the entirety of the call.[2] This call is not documented anywhere in the discovery that has been disclosed.

In addition to the aforementioned undisclosed and unaccounted-for interviews, the Government has attributed statements to Mr. Vasquez in disclosed MLAT applications[3] that are not documented in any Report of Investigation, and which

---

[2] To the extent the Court may want additional information related to either the existence of this call or the substance of the conversation, Mr. Vasquez respectfully requests an *ex-parte* hearing, as the information implicates attorney-client privilege. Undersigned counsel has reason to believe exculpatory statements were made during this call, which would implicate the Government's *Brady* obligation.

[3] The disclosure of the MLAT applications has been the subject of ongoing litigation, as the Court knows. For the last year, the Government has resisted providing the defense with a complete set of the MLAT applications – documents drafted by DOJ's Office of Internal Affairs, based on information provided to it by the prosecution team. The Court ordered the disclosure of two initial MLAT requests, to the Philippines and Switzerland, which contain the statements allegedly made by Mr. Vasquez and discussed in this Motion. The Government refused to provide the subsequent applications to the defense. Instead, on the Court's order, representatives for the defense viewed the remaining MLAT applications at the United States Attorney's Office. Apart from the fundamental issue related to a potential statute of limitations defense based on inaccurate tolling, the existence of otherwise unaccounted for statements attributed to Mr. Vasquez in the original MLAT applications reenforces the need for the defense to have in its possession any MLAT application that references a statement made by Mr. Vasquez. Limiting the defense's ability to review the applications in time and place limits Mr. Vasquez's ability to identify the types of contradictions now identified in the original MLAT applications and elsewhere and undermines Mr. Vasquez's constitutional right to prepare a defense.

directly contradict statements allegedly made by Mr. Vasquez in the proffer interviews.

In December of 2024, Mr. Rubino filed a Motion to Exclude False Statements, Production of Rough Notes and Drafts of Reports and Request for Evidentiary Hearing to address the mischaracterizations in the Reports of Investigation documenting Mr. Vasquez's proffers. DE 78. The Government filed a response at Docket Entry 88. In its Response, the Government argued that it "never used Vasquez's statements in support of any other investigative step." The Government's Response directly contradicts the existence of statements made by Mr. Vasquez in the Government's MLAT applications. More specifically, the Government repeatedly references statements attributable to "CS-1" in its MLAT applications. [4] Now that Mr. Vasquez has identified statements attributed to himself (as "CS-1") in the MLAT applications, he is left to wonder (a) how the Government represented to the Court that it never relied on Mr. Vasquez's statements in support of investigative steps when collecting evidence from foreign countries; and (b) which version of the contradictory statements the Government will rely on at trial.

For example, on April 28, 2020, the Government sent a Request for Assistance in the Investigation of Juan Andres Donato Bautista to the Central Authority of the Republic of the Philippines, the first of nine such requests over the course of five years, including following the indictment of individuals. The Request outlined the

---

[4]     In response to a request by counsel for a co-defendant, the Government identified "CS-1" as Jorge Vasquez on March 2, 2026.

"Facts" supporting the Assistance Requested, which included a request for extensive records from private and public entities in the Philippines. Nearly identical requests were made of Switzerland. The "Facts" include the following statements, attributed to CS-1, aka, Mr. Vasquez:

- "CS-1 further told HSI agents that the BEL [Baumann Enterprises Limited] accounts were Bautista's…"

- "CS-1 provided information to the HSI agents that Bautista used a second shell company, CL Metals and Wire Mfg. Corp (CL Metals), in the Philippines, which was used to send bribe payments to Bautista's bank account held in the name of CL Metals at China Bank…"

These statements, attributed to Mr. Vasquez, are not detailed anywhere across the Reports of Investigation by HSI detailing alleged statements made by Mr. Vasquez except for the MLAT applications. More importantly, the statements directly contradict statements that were noticed by the Government via the Reports of Investigation. It is entirely unclear from the discovery which contradicting statements Mr. Vasquez allegedly made, especially since the Government appears to rely on both.

The Government has already acknowledged that Agent Almeida took liberties in his characterizations of Mr. Vasequez's statements.[5] History is repeating itself, only now, the contradictions between statements attributed to Mr. Vasquez (as CS-

---

[5]     In its Response to Mr. Rubino's Motion to Exclude, the Government said, "Defense counsel has averred his version of events in a sworn affidavit and the crux of his complaint is that his client never used the words 'bribe, kickbacks, or embezzlement.' *See* Dec. 26 Mot., Ex. 3. The government does not dispute this." DE 88 at fn 6. Agent Almeida attributed statements tantamount to legal conclusions to Mr. Vasquez, when the Government conceded that those statements were never uttered.

1) in the MLAT applications and those set forth in the Reports of Investigation cannot be explained by mischaracterizations or embellishments. Compare:

| Statement in the MLAT Applications Attributed to CS-1 | Statement in the Report of Investigation Attributed to Mr. Vasquez |
|---|---|
| "CS-1 further told HSI agents that the BEL [Baumann Enterprises Limited] accounts were Bautista's…" | "VASQUEZ stated he did not know who the beneficial owners of the above noted companies were…"   [in reference to Baumann Enterprises Limited]. |
| "CS-1 provided information to the HSI agents that Bautista used a second shell company, CL Metals and Wire Mfg. Corp (CL Metals), in the Philippines, which was used to send bribe payments to Bautista's bank account held in the name of CL Metals at China Bank…" | Following Mr. Vasquez telling agents he did not know the beneficial owners of Baumann, "VASQUEZ wanted to clarify that the payment ($1,000,000) he was directed to make to C.L. METALS AND WIRE MFG CORP. (hereafter C.L. METALS) in late 2016 was regarding the money ($1,000,000) that he sent to BAUMANN in August 2016 that was subsequently returned to the banks. This transaction led VASQUEZ to believe that the payment was for the benefit of the same entity as BAUMANN." |

The Reports of Investigation make clear that Mr. Vasquez was not aware of the identities of the beneficial owners of Baumann Enterprises Limited and C.L. Metals. However, in its MLAT applications, the Government tells the Central Authorities of the Philippines and Switzerland that Mr. Vasquez connected a central link in its case between the recipient bank accounts and co-defendant Juan Andres Donato Bautista as the beneficial owner of both companies. Both cannot be true, yet the Government seemingly relies on each, and in doing so, convinced foreign nations to compel individuals and entities to provide evidence to the DOJ to use against the

defendants in this case. Mr. Vasquez has the right to know which statement the Government claims he made.

Undersigned counsel and the Government conferred extensively over the last few weeks before the filing of this Motion. The Government conferred with its Agents to try to resolve the issues raised in this Motion. The Government represented that all of the Agents' notes and Reports of Investigation related to Mr. Vasquez's statements have been disclosed. The parties remain at an impasse.

Mr. Vasquez respectfully requests a hearing to determine what statements the Government has failed to disclose and to determine an appropriate remedy. Initially, Mr. Vasquez requests the Court order the disclosure of the statements made on November 21, 2019, and on August 25, 2020, along with any MLAT application attributing a statement to CS-1. Mr. Vasquez also requests clarification regarding the contradictory statements attributed to Mr. Vasquez in the MLAT applications. Mr. Vasquez further reserves the right to request additional remedies after the disclosures.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff
Florida Bar Number 0086951
lkrasnoff@markuslaw.com

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent an e-mail notification of such filing to all CM/ECF participants on April 13, 2026.

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff