UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 24-CR-20343-KMW

UNITED STATES OF AMERICA,
     Plaintiff,

vs.

JORGE MIGUEL VASQUEZ,
     Defendant.

_____/

**REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO
MR. VASQUEZ'S MOTION TO COMPEL**

The Government's Response is part of a sustained effort to avoid accountability for how law enforcement investigated Mr. Vasquez and this case. The Government mischaracterizes the nature of Mr. Vasquez's Motion, misstates the record, and relies on self-serving representations that the record does not support. A hearing is warranted for at least three independent reasons: (1) a 23-minute substantive interview of a represented cooperating witness, who was later indicted, went entirely undocumented by law enforcement; (2) statements attributed to Mr. Vasquez in the Government's MLAT applications directly contradict the statements attributed to him in the Reports of Investigation; and (3) the Government represented to this Court that it "never used Vasquez's statements in support of any other investigative step," DE 88 at 8 – 9, a representation that the Government's own MLAT applications (which it has resisted providing to the defense) prove to be false. None of these issues was before this Court in prior motions as claimed by the Government. None of them can be resolved on paper. Taken together, they paint a picture of an investigation in which law enforcement operated without accountability: undocumented interviews of

key figures, contradictory statements presented to foreign authorities and federal judges, and a material misrepresentation to this Court. Mr. Vasquez's right to a fair trial depends on the Court's willingness to examine what actually happened.

1. **This Motion to Compel is Categorically Different from Any Issue or Motion Previously Addressed by the Court.**

The Government claims that Mr. Vasquez's Motion "revisits the same or similar requests previously denied or granted by this Court." DE 382 at 1. That assertion is belied by the record.

Mr. Vasquez's Motion to Exclude False Statements, Production of Rough Notes and Drafts of Reports, and Request for Evidentiary Hearing, DE 78, challenged the accuracy of Special Agent Almeida's characterizations of Mr. Vasquez's statements in the Reports of Investigation. While the Government admitted that Almeida's characterizations were not verbatim accounts of Mr. Vasquez's statements, the Court denied that Motion, predicating its decision on the Government's assurance that the statements at issue would not be introduced in the Government's case-in-chief. Transcript of March 4, 2025, hearing at 17. The instant Motion raises an entirely different issue that has not been raised with the Court.

First, the existence of the August 25, 2020, telephonic interview is not a dispute about how Mr. Vasquez's words were characterized; it is about a 23-minute substantive interview with a cooperating witness (and later defendant) that was never documented at all. Certainly, it is further evidence of law enforcement's willingness to investigate on its own terms, free from the accountability that proper documentation provides. But it does not raise the same concerns raised in any prior

motion. Second, the contradictions between the MLAT applications and the ROIs were not known to the defense at the time the Motion to Exclude was filed because the Government had not identified Mr. Vasquez as CS-1 and did not do so until the *defense* affirmatively asked. And third, the Government's false representations to this Court – that it never used Mr. Vasquez's statements to further investigative steps – was made in the Government's Response to Mr. Vasquez's Motion to Exclude, DE 88, and the falsity only became apparent when the defendants were permitted, in limited fashion, to examine the MLAT applications at the U.S. Attorney's Office Therefore, the issue could not have been raised in Mr. Vasquez's Motion to Exclude, DE 78.

The relief sought here is also categorically different. Mr. Vasquez's Motion to Exclude asked the Court to exclude statements and strike characterizations from the ROIs. The instant Motion asks the Court to compel production of statements never documented and to hold a hearing on the Government's investigation. A Motion to Exclude and a Motion to Compel seek opposite remedies. The Government's reliance of the Court's denial on Mr. Vasquez's prior Motion to Exclude is an irrelevant distraction, because the issues are simply not the same.

### 2. Law Enforcement's Investigative Failures Cannot Shield the Government from Its Disclosure Obligations.

The Government's treatment of two telephonic interviews with Mr. Vasquez — on November 21, 2019, and August 25, 2020 — reflects a pattern of investigation that fails to satisfy the Government's obligations under Rule 16 and *Brady*. Law enforcement did not document the August 2020 interview at all. The November 21, 2019 interview, which Mr. Vasquez recalls as a lengthy conversation covering

multiple subjects, received a single sentence buried as a footnote-style note in a separate interview's ROI. Given that Mr. Vasquez has consistently maintained his innocence, law enforcement's failure to document these interviews – nearly six and seven years ago – means that the content of those interviews is permanently lost. That loss harms the defendants, to be sure. But it is part and parcel of Almeida's ends-focused investigation.[1] It is part of an inexcusable and increasingly apparent pattern, and it warrants examination at a hearing.

    A.  The August 25, 2020, Interview

The Government does not dispute that a substantive telephonic interview occurred on August 25, 2020. DE 382 at 6 – 7. It does not dispute that the interview lasted approximately 23 minutes. It does not dispute that Mr. Rubino was not on the call. It does not dispute that the interview covered the substance of the investigation. Instead, the Government argues that because no ROI was created, there is nothing to produce. The Government argues that "a party cannot produce what it doesn't have," DE 382 at 7 (quoting *United States v. Covington*, 729 F.2d 702, 712 (11th Cir. 1984)), but that argument proves too much. The Government's failure to document is not a defense to the Motion: it is the reason the Motion must be granted. The question for the Court is not whether an ROI exists; it plainly does not. The question is whether the Government's failure to create one satisfies its obligations under Rule 16 and *Brady*. The answer is no.

---

[1]    An investigation led by Special Agent Almeida, who the Court noted is "vital and omnipresent" in this case. Transcript of October 29, 2025, hearing at 18.

Rule 16(a)(1)(A) requires the Government to disclose "the substance of any relevant oral statement made by the defendant" in response to interrogation by a known government agent. Fed. R. Crim. P. 16(a)(1)(A). The rule does not condition that obligation on whether the Government chose to document the statement. A 23-minute investigative interview with a cooperating witness, conducted without his attorney present, on an active federal investigation, generated relevant oral statements. Almeida's unilateral decision not to memorialize those statements does not extinguish the Government's obligation to disclose their substance.

The Government's *Brady* argument also fails. The Government contends that because Mr. Vasquez took his own notes of the interview, there is no *Brady* issue because the information is available to the defense. DE 382 at 7. But *Brady*'s purpose is not merely to ensure that a defendant knows what he himself said. *Brady* protects against the suppression of evidence favorable to the accused that is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Government's obligation requires it to disclose what Almeida learned from Mr. Vasquez, including any exculpatory information that he conveyed. Mr. Vasquez's own notes, whatever they contain, cannot substitute for the Government's account of a 23-minute investigative interview, including whatever exculpatory information was relayed and whatever leads were or were not pursued as a result. Mr. Vasquez cannot satisfy the Government's *Brady* obligation for it; that obligation, rooted in the Constitution's guarantee of due process, belongs to the prosecution team. And the prosecution team utterly failed to meet that obligation.

Strikingly, during meet-and-confer, the Government asked defense counsel to produce Mr. Vasquez's own notes of the interview to "refresh the agents' recollections." DE 382 at 7. The Government is asking Mr. Vasquez to reconstruct the Government's investigative record from his own privileged materials – to shift the Government's constitutional obligations onto an indicted defendant. The Government acknowledges it has no independent account of a substantive interview with a cooperating witness, and its proposed solution is to have the defense fill the gap. The remedy for non-documentation cannot be to shift the burden onto Mr. Vasquez.

B.  The November 21, 2019, Interview

The November 21, 2019, interview presents a related but distinct problem. Unlike the August 2020 call, the Government acknowledges this interview in discovery, but only barely. The entirety of this interview is reduced to a single sentence, appended as a note to the ROI for the October 30, 2019, proffer session. What Mr. Vasquez recalls as a lengthy telephonic interview, Almeida summarized in a single note.

Taken together, the treatment of these two calls reveals a consistent and inexcusable approach: when law enforcement's interactions with Mr. Vasquez were memorialized, they were memorialized inaccurately; when they were not memorialized at all, the Government now asks this Court to accept that absence as a reason to deny relief. That is not how Rule 16 or *Brady* works. The accused is entitled to know what statements the Government attributes to him and to have a meaningful opportunity to challenge those attributions. Where law enforcement conducts

substantive interviews with a cooperating witness and either creates no record or creates one so sparse as to be meaningless, that entitlement is violated. This is not a minor procedural failing — it is a due process problem, a discovery problem, and a fair trial problem. A hearing is the only mechanism available to this Court to examine the full scope of law enforcement's investigative failures and fashion an appropriate remedy.

**3. The Court Should Hold a Hearing Because the Government Made a False Representation to the Court and Used Documents It Withheld to Exploit that Misrepresentation.**

The Government told this Court: "Indeed, the Government never used Vasquez's statements in support of any other investigative step." DE 88 at 8 – 9. The Government made that representation in the context of arguing that no hearing was warranted, and in direct response to the defense's concern that Mr. Vasquez's statements had been used in ways that were never disclosed. In the same filing, the Government stated that "defendant Vasquez concedes in his Motion that he has not identified a single use in any affidavit by the government of the statements he claims are inaccurate," and used that concession to argue against a hearing. DE 88 at 8.

That statement was blatantly false: the Government did use Mr. Vasquez's statements in support of other investigative steps. The Government's MLAT applications — government-authored documents, submitted to foreign sovereigns, seeking international evidence — attributed statements directly to CS-1, who is Mr. Vasquez. At the time the Government filed Docket Entry 88 and made its claim, it had not disclosed to the defense that CS-1 was Mr. Vasquez, and it had not disclosed

(and in fact resisted disclosing) the MLAT applications to the defense. The Government used Mr. Vasquez's inability to identify a use of his statements as an argument against a hearing, while withholding the very documents that contained those uses.

The MLAT applications are not ambiguous. They attribute specific statements to CS-1 and use those statements as the factual predicate for requests to foreign governments to compel evidence.[2] Those statements directly contradict statements attributed to Mr. Vasquez in the ROIs. The Government told the Central Authorities of the Philippines and Switzerland that CS-1 identified Bautista as the beneficial owner of the BEL accounts and linked him to CL Metals. The ROI documents Mr. Vasquez stating that he did not know who the beneficial owners of those companies were. These statements relate to a fundamental factual issue in this case, which could be dispositive as to Mr. Vasquez's culpability. But both versions of events are attributed to the same person. Both are reflected in government-authored documents. Both cannot be true, but the Government has relied on each for different purposes, when convenient to law enforcement's eight-year pursuit of Mr. Vasquez.

The Government's Response does not explain this contradiction because it cannot logically square this circle. It does not explain why it represented to this Court that it "never used" Mr. Vasquez's statements to further investigative steps while simultaneously using those statements in MLAT applications to compel evidence

---

[2]     Of course, many of these MLATs form the basis of tolling applications which extended the statute of limitations in this case, as the Court is aware.

from foreign nations. The Government's only answer on the MLAT issue is that the matter is moot because the defense had an opportunity to review the applications. That argument fails for multiple reasons.

First, the January 30, 2026, review was conducted by Mr. Piñate's counsel on behalf of all defense parties to examine the dates of the MLAT applications in connection with statutory tolling. At the time of the review, the Government had not yet identified Mr. Vasquez as CS-1, so there would be no reason for undersigned counsel to believe Mr. Vasquez's statements were contained within the MLAT applications. To this date, Mr. Vasquez still has not received the MLAT applications, which are plainly discoverable.

Second, the Government's offer that defense counsel may return to view the MLATs is not a substitute for production. The Government continues to resist producing the MLAT applications, despite the applications containing statements attributable to Mr. Vasquez. If the Government has specific concerns about statements contained in five or six old applications that are not covered by the existing protective orders in this case, it can request a modified protective order from the Court. But the Government drafted those MLAT applications and included statements allegedly made by Mr. Vasquez to procure evidence from foreign nations against him. He is entitled to possession of the applications

***

The Government argues that disagreements with agent summaries are for trial and cross-examination, not for pretrial hearings. But this Motion is not only

9

about agent mischaracterizations, a recurring feature in this case. It presents a pattern of something much more serious.

Law enforcement conducted a 23-minute substantive interview with a represented cooperating witness and created no record of it. It attributed contradictory statements to that same witness across two sets of government-authored documents, using each version for a different purpose. And it told this Court that it never used that witness's statements to further its investigation — while its own MLAT applications prove otherwise.

These are not trial issues. They are not credibility disputes to be resolved on cross-examination. They are failures of investigation, failures of disclosure, and a failure of candor to the Court. Each one independently warrants a hearing.

Mr. Vasquez respectfully requests that the Court order full production of all MLAT applications attributing statements to CS-1 and hold an evidentiary hearing to examine the scope of law enforcement's investigative failures and determine the appropriate remedy.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff
Florida Bar Number 0086951
lkrasnoff@markuslaw.com

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of Court which sent an e-mail notification of such filing to all CM/ECF participants on May 4, 2026.

/s/ *Lauren Field Krasnoff*
Lauren Field Krasnoff