**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 24-CR-20343-WILLIAMS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

SGO CORPORATION LIMITED,

Defendant.
_____________________________________/

**ORDER**

**THIS MATTER** is before the Court on Defendant SGO Corporation Limited's ("***SGO***") Motion to Compel Discovery on the Motion to Dismiss the Superseding Indictment for Vindictive and Selective Prosecution (DE 406) ("***Motion to Compel***").[1] On September 16, 2026, the Court held a status conference during which it addressed the Motion to Compel and indicated it would grant the Motion on a limited basis. (DE 495). For the reasons stated on the record and summarized below, the Motion to Compel (DE 406) is **GRANTED IN PART AND DENIED IN PART**.

## I. FACTUAL BACKGROUND

As the facts of this case are too convoluted to comprehensively recount in this Order, the Court focuses on the facts relevant to its ruling. For a six-year period, the Government investigated SGO executives for their role in a money laundering and bribery scheme related to the May, 2016 Philippine elections. (DE 351 at 7); *see* (DE 12). The investigation culminated in a six-count indictment (DE 12) ("***First Indictment***"), returned

[1] Throughout this Order, the Court uses the CM/ECF pagination rather than the document pagination.

on August 8, 2024, which charged SGO and Smartmatic executives Roger Alejandro Piñate Martinez, Jorge Miguel Vasquez, and Elie Moreno (collectively, "***Individual Defendants***"). (DE 12). The First Indictment also charged Juan Andres Donato Bautista, the former Chairman of the Republic of Philippines' Commission of Elections. (DE 12 ¶ 3). The First Indictment alleged: conspiracy to violate the Foreign Corrupt Practices Act ("***FCPA***") (Count I); violations of the FCPA (Count II); conspiracy to commit money laundering (Count III); and international laundering of monetary instruments (Counts IV, V, and VI).[2] (*Id.* at 7–23). The FCPA "prohibits officers of a domestic concern from making corrupt payments to a 'foreign official.'"[3] *United States v. Duperval*, 777 F.3d 1324, 1333 (11th Cir. 2015) (quoting 15 U.S.C. § 78dd–2). SGO was not charged. *See* (DE 12). In fact, SGO had been cooperating with the Government since 2021, years before the First Indictment was returned.[4] (DE 351 at 7).

The original trial date was set for October 7, 2024. (DE 28). However, due to the case's complexity and the volume of discovery, the Court granted Mr. Piñate Martinez and

[2] Juan Andres Donato Bautista and Elie Moreno were only charged with Counts III through VI. (DE 12).

[3] The FCPA defines "domestic concern" as:

> (A) any individual who is a citizen, national, or resident of the United States; and
> (B) any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.

15 U.S.C. § 78dd-2(h)(1).

[4] Although the Parties may dispute the breadth and quality of SGO's efforts to cooperate, there is no question that SGO and the Government were engaged in discussions and the exchange of documents related to this matter.

Mr. Vasquez's request to reschedule the trial date. (DE 50; DE 51). Trial was rescheduled to October 6, 2025. (DE 70). Mr. Vasquez subsequently filed an Unopposed Motion to Continue Trial and Remaining Corresponding Deadlines (DE 246) ("***Motion to Continue***"). While the Government did not oppose Mr. Vasquez's Motion to Continue, counsel "note[d] that **they will oppose further continuances and the Government requests that the new trial date be special set by the Court.**" (DE 246 ¶ 10) (emphasis added). The Motion to Continue was granted, and trial was set for April 20, 2026. (DE 248). At no time during the discussions regarding trial dates did the Government indicate that an additional party might be indicted.

On January 20, 2025, Donald J. Trump was sworn in to his second term as President of the United States. On February 5, 2025, then-Attorney General Pamela Bondi issued a memorandum ("***Bondi Memo***").[5] The Bondi Memo instructed, "[t]he Criminal Division's Foreign Corrupt Practices Act Unit shall prioritize investigations related to foreign bribery that facilitates the criminal operations of Cartels and TCOs, and shift focus away from investigations and cases that do not involve such a connection."[6]

Consonant with the Bondi Memo, on February 10, 2025, President Trump signed Exec. Order No. 14209, 90 Fed. Reg. 9587 (Feb. 10, 2025). It announced a "pause" to FCPA enforcement because "[c]urrent FCPA enforcement impedes the United States' foreign policy objectives and therefore implicates the President's Article II authority over foreign affairs." *Id.* at 9587. The Executive Order required the Attorney General, for a

---

[5] Pamela Bondi, *Total Elimination of Cartels and Transnational Criminal Organizations*, U.S. DEP'T OF JUSTICE (Feb. 5, 2025), https://www.justice.gov/ag/media/1388546/dl?inline.

[6] *Id.* at 4.

period of 180 days, to "cease initiation of any new FCPA investigations or enforcement actions, unless the Attorney General determines that an individual exception should be made." *Id.* It also mandated that, during the 180-day period, the Attorney General "review in detail all existing FCPA investigations or enforcement actions and take appropriate action with respect to such matters to restore proper bounds on FCPA enforcement . . . ." *Id.*

On June 9, 2025, then-Deputy Attorney General Todd Blanche issued an additional memorandum ("***Blanche Memo***") regarding FCPA enforcement.[7] The Blanche Memo "establishes guidelines to ensure that FCPA investigations and prosecutions are carried out in accordance with President Trump's directive . . . ."[8] Further, it directs that "prosecutors shall focus on cases in which individuals have engaged in criminal misconduct and not attribute nonspecific malfeasance to corporate structures[.]"[9,10]

Since Executive Order 14209, the Government has moved to dismiss notable FCPA prosecutions. *See, e.g.*, Letter from U.S. Attorney Regarding Motion to Dismiss, *United States v. Gordon Coburn*, No. 2:19-cr-00120 (D.N.J. Apr. 2, 2025), DE 1034 ("The Government's motion is based on the recent assessment of the Executive Order's application to this matter.");[11] Notice re Response to Court's June 26 Order at 9, *United*

[7] Todd Blanche, *Guidelines for Investigations and Enforcement of the Foreign Corrupt Practices Act (FCPA)*, U.S. DEP'T OF JUSTICE (June 9, 2025), https://www.justice.gov/dag/media/1403031/dl.

[8] *Id.* at 1.

[9] *Id.*

[10] The Court takes judicial notice of the Bondi and Blanche Memos and Executive Order No. 14209 as matters of public record. *See* FED. R. EVID. 201(b).

[11] *Gordon Coburn* contains similar facts to the instant case according to the indictment in that case. The President and Chief Executive Officer for Cognizant Technology Solutions

*States v. Adani*, No. 1:24-cr-00433 (E.D.N.Y July 4, 2026), DE 37 (then-Principal Associate Deputy Attorney General Trent McCotter explaining that the Government moved to dismiss FCPA charges against Indian officials in part because they "do not plausibly satisfy any of the bases given in the Blanche Memorandum for FCPA charges worthy of proceeding"). The Government also elected to close FCPA investigations into multiple companies. (DE 351 at 22 n.14; DE 374 at 7).

However, on October 16, 2025, the Government filed a Superseding Indictment (DE 264) ("***Superseding Indictment***"), adding SGO as a defendant in this case.[12] On March 10, 2026, SGO filed a Motion to Dismiss the Superseding Indictment for Vindictive and Selective Prosecution (DE 351) ("***Motion to Dismiss***"), arguing that the prosecution of SGO violates the Equal Protection and Due Process Clauses of the Constitution. (DE 351 at 20, 25). On May 26, 2026, SGO filed their Motion to Compel to obtain discovery in support of their Motion to Dismiss. (DE 406 at 11).

The Motion to Dismiss and Motion to Compel are premised on political events that have embroiled Smartmatic in the wake of the 2020 election. Since that election, multiple high-profile individuals and organizations connected to then-Former President Donald Trump have alleged that Smartmatic, a subsidiary of SGO, interfered in the election. (DE 351 at 10). They include Rudolph Giuliani, Sidney Powell, Jeanine Pirro, and Mike

---

Corporation were alleged to have bribed Indian officials in order to obtain a permit for construction by funneling money to the officials through another company. *United States v. Gordon Coburn, et al.*, No. 2:19-cr-00120 (D.N.J. Feb. 19, 2019), DE 1.

[12] The Superseding Indictment alleges the same counts as the First Indictment, but SGO is added as a defendant for all counts other than Count II.

Lindell.[13] (*Id.* at 10–12). President Trump has also reposted content blaming Smartmatic

---

[13] *See, e.g.*, LIVENOW FROM FOX, *"TRUMP WILL WIN" Rudy Giuliani Says LEGAL CHALLENGES WILL PREVAIL*, at 43:02, 44:52 (YouTube, Nov. 19, 2020), https://www.youtube.com/watch?v=akqeL9AtJYI (cited in DE 351-1 at 31–32) (alleging Smartmatic is associated with Venezuela's communist government, a Smartmatic patent holder had a conversation with Antifa members in which he stated that he rigged the election for Joe Biden, and that many others associated with Smartmatic have social media accounts filled with hatred for President Trump and the United States); Rudy W. Giuliani (@RudyGiuliani), X (Nov. 14, 2020, 9:16 AM), https://x.com/RudyGiuliani/status/1327616396939948032 (cited in DE 351-1 at 15–16) (claiming Dominion was a front for Smartmatic, "who was really doing the computing" in states across the country); *The Media Does Not Call an Election*, FOX NEWS (Nov. 18, 2020, 9:58 A.M.), foxnews.com/transcript/the-media-does-not-call-an-election (cited in DE 351-1 at 17–30) (transcript of Jeanine Pirro's interview with Sidney Powell on Justice with Judge Jeanine, in which Ms. Powell claimed Smartmatic software was used to alter votes in the 2020 election and Ms. Pirro wished Ms. Powell good luck on her mission to investigate election interference); Exhibit 34 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 4, *Smartmatic USA Corp. v. Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-40 (transcript of Mr. Lindell's February 8, 2021 interview on Real America with Dan Ball, during which he stated, "[w]e have them from November 1 all the way through the election, and shows [sic] them a massive attack on our country by China and other country [sic]. China did 60% of this. It was all done through Dominion machines and and [sic] Smartmatic machines[]"); Exhibit 35 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 11, *Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-41 (transcript of Mr. Lindell's February 11, 2021 appearance on the One America News Network, during which he stated, "[t]his was an attack on our country, these Dominion machines and Smartmatic, these machines that were, that are, that were this, that were the tools of this attack, and we will never have another fair election if we don't, if we don't stop that, so I will never back down[]"); Exhibit 36 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 7, *Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-42 (transcript of Mr. Lindell's February 24, 2021 appearance on the Pete Santilli show, during which he stated, "I have, I have 100%, not 99%, 100% evidence that of everything that they did Smartmatic did, ES&S, all of those machines did and stoled [sic] our country and stoled [sic] our election[]"); Exhibit 38 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 6, *Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-44 (transcript of Mr. Lindell's March 30, 2021 appearance on the Eric Metaxas Radio Show, during which he stated, "[t]hey came in and stole this election through these machines, Dominion and Smartmatic[]"); Exhibit 39 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 28, *Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-45 (transcript of Mr. Lindell's April 1, 2021 appearance on Indivisible with John Stubbins, during which he stated "[t]hat's what we have left because the mainstream media is gone. They're just gone. They're getting blackmailed. They're getting threatened

for interfering in United States and Venezuelan elections, calling Smartmatic "disgraceful"[14] and expressing that those who "rigged" the 2020 election must pay.[15] In response to the statements by President Trump's confederates, Smartmatic brought various defamation suits, which are largely ongoing. *See Smartmatic USA Corp. v. Fox Corp.*, 183 N.Y.S.3d 402, 402 (N.Y. App. Div. 2023) (reinstating claims against Rudolph Giuliani and Jeanine Pirro and affirming denial of Fox News and other defendants' motions to dismiss); *Lindell*, No. 0:22-cv-0098, at *2 (D. Minn. Sep. 26, 2025) (granting

---

by, you know, Dominion and Smartmatic[]"); Exhibit 41 to Declaration of Timothy M. Frey in Support of Plaintiffs' Motion for Partial Summary Judgment at 31–32, *Lindell*, No. 0:22-cv-0098 (D. Minn. Nov. 13, 2024), DE 395-47 (transcript of Mr. Lindell's April 8, 2021 appearance on Greg Hunter's USA Watchdog, during which he stated "[n]ot only that, they're, you know what they did to our country them and Smartmatic, let's not forget Smartmatic, they're like the mothership of this. And for not only being involved in the biggest crime against our country, probably in history, well it will be in history of [sic] because it affects every person, but then they go and attack a company that had nothing to do with this[]").

[14] Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Feb. 5, 2026, 11:44 PM), https://media-cdn.factba.se/realdonaldtrump-truthsocial/116021858466596328.jpg (cited in DE 351-1 at 183–84, which includes the now-removed original post by RealRobert (@Real_RobN) that President Trump reposted); Donald J. Trump (@realDonaldTrump), X (Dec. 1, 2020, 8:48 AM), https://x.com/realDonaldTrump/status/1333769900427456512 (cited in DE 351-1 at 33–34, which includes the now-removed original post by Melissa Tate #StopTheSteal (@TheRightMelissa) that President Trump reposted).

[15] *E.g.*, Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Jan. 17, 2026, 5:09 PM), https://truthsocial.com/@realDonaldTrump/posts/115912250523181458 (cited in DE 351-1 at 181–82) (stating that the election was "rigged" and there "must be a price to pay"); Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Nov. 23, 2025, 12:22 PM), https://truthsocial.com/@realDonaldTrump/posts/115600167812342707 (cited in DE 351-1 at 133–36) (asserting "[w]e must focus all of our energy and might on ELECTION FRAUD!!" as a repost of a Lara Logan (@laralogan) post about Smartmatic).

plaintiffs' partial motion for summary judgment against Mr. Lindell).[16,17] SGO contends that President Trump's personal animus against SGO and assertion of its rights against President Trump's confederates precipitated the filing of the Superseding Indictment. (DE 351 at 18–20).

## II. LEGAL STANDARD

"Prosecutors are given broad discretion in deciding against whom to focus limited prosecutorial resources, and a strong 'presumption of regularity supports ... [those] decisions.'" *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). "As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006).

However, "under the Due Process Clause of the Fifth Amendment, the decision

---

[16] After SGO was indicted, Mike Lindell tweeted:

> This is HUGE. The DOJ is now charging Smartmatic - the same company I was just found "guilty" of defaming by a judge in Minnesota! You can't make this up.
>
> I'm fighting back and filing an appeal, but the deadline is October 27th. We need to raise the funds ASAP to keep this going.
> 👉 Please help at GiveSendGo.com/LindellFund
>
> Every dollar counts. This is about saving our country and protecting the truth!

Mike Lindell (@realMikeLindell), X (Oct. 20, 2025, 1:41 PM), https://x.com/realMikeLindell/status/1980328480861745191 (cited in DE 351-1 at 123–24).

[17] The Court takes judicial notice of these court orders.

whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (citation and quotation marks omitted). "A defendant asserting that she was selectively prosecuted must show that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015) (citation and quotation marks omitted).

Additionally, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (citation and quotation marks omitted). Therefore, prosecutors may not bring charges out of vindictiveness, or a "desire to punish a person for exercising his rights." *Barner*, 441 F.3d at 1315 (citing *Goodwin* 457 U.S. at 372). Though "'[t]he typical vindicative prosecution claim is based on the enhancement of charges in response to a defendant's exercise of a legal right[]' . . . courts have recognized that the initiation of the prosecution may itself be a basis for a vindictive prosecution claim." *United States v. Simbaqueba Bonilla*, No. 07-20897-CR, 2010 WL 11627259, at *4 (S.D. Fla. May 20, 2010) (quoting *United States v. Napue*, 834 F.2d 1311, 1330 (7th Cir. 1987), *overruled on other grounds by Kentucky v. King*, 563 U.S. 452 (2011)); *see United States v. Carey*, 816 F. Supp. 3d 129, 139–40 (D.D.C. 2026) (collecting cases where defendants challenged the decision to initiate prosecution following the exercise of free speech).

A defendant can prove a vindictive prosecution claim by establishing actual vindictiveness, which requires "objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights." *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Alternatively, in certain circumstances, a defendant

may show sufficient facts to give rise to a presumption of vindictiveness.[18] *Saltzman*, 537 F.3d at 359.

"[I]n order to obtain an evidentiary hearing on a selective prosecution claim, the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution." *Brantley*, 803 F.3d at 1271 (citation and quotation marks omitted). Alternatively stated, "[i]n order to obtain discovery in support of [a selective prosecution] claim, a defendant must provide some evidence tending to show the existence of the essential elements of the defense." *Jordan*, 635 F.3d at 1188 (citation and quotation marks omitted); *accord United States v. Sanders*, 211 F.3d 711, 718 (2d Cir. 2000). "[M]ost Circuits to address the issue have held that the standard for discovery is the same for both selective and vindictive prosecution cases." *United States v. Rasco*, No. CR 4:08-100, 2010 WL 2160836, at *4 (S.D. Ga. May 27, 2010) (citations omitted); *see United States v. Wasserman*, No. 8:20-CR-207, 2021 WL 5822685, at *7 (M.D. Fla. Dec. 8, 2021). "Obviously, a defendant need not prove his case in order to justify discovery on an issue." *United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998) (finding defendant made a sufficient showing to warrant discovery into selective prosecution claim despite failure to establish prima facie case of selective prosecution).

---

[18] "Although the Eleventh Circuit has not definitively determined whether the presumption of vindictiveness can ever arise in the pretrial context, the court noted that such a presumption could only arise if the facts of the case 'form a realistic likelihood of vindictiveness.'" *United States v. Myrie*, No. 809-CR-572-T-30TGW, 2011 WL 250550, at *2 (M.D. Fla. Jan. 26, 2011) (quoting *Barner*, 441 F.3d at 1318 (citation omitted)). To establish a presumption of vindictiveness, rather than proving actual vindictiveness, a defendant must first make a threshold showing that a harsher charging decision followed their assertion of a right. *Id.* If this threshold showing is made, the defendant then must identify other factors to raise a realistic likelihood of vindictiveness. *Id.* (citations omitted). "[E]ven when the presumption applies, it may be rebutted by objective evidence justifying the prosecutor's action." *Barner*, 441 F.3d at 1317 n.6.

## III. DISCUSSION

"Each claim of prosecutorial vindictiveness gives rise to a different analysis based on the unique facts of the individual case." *United States v. Spence*, 719 F.2d 358, 361 (11th Cir. 1983). In analyzing the unique facts of this case, the Court takes guidance from the factors that other courts have found pertinent in deciding whether to order discovery into vindictive and selective prosecution claims.

First, a vindictive prosecution claim may be supported by evidence that the Government bucked a trend in enforcement activity in prosecuting the defendant. *See United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989). For example, in *Adams*, the Sixth Circuit allowed discovery into a vindictive prosecution claim made by a former employee of the Equal Employment Opportunity Commission ("***EEOC***"), who had been indicted for submitting false federal income tax returns after suing the EEOC. *Id.* at 1146. In so ruling, the court considered that "taxpayers who underreport their income and then voluntarily amend their returns and pay the deficiency have not heretofore been subjected to prosecution in the Western District of Tennessee—at least not within the memory of the district judge, whose tenure goes back to 1966." *Id*. at 1145. There is similar evidence here: while the Blanche and Bondi Memos and Executive Order 14209 explicitly announced an intention to rein in and limit FCPA enforcement, particularly against corporations, SGO was charged, nonetheless.

Second, a vindictive prosecution claim may be supported by the timing between a defendant's assertion of a right and the allegedly vindictive prosecutorial act. *See United States v. Dwyer*, 287 F. Supp. 2d 82, 89 (D. Mass. 2003) (considering "that Defendant went from being a witness to a target within one week of invoking the Fifth Amendment"

in granting discovery into vindictive prosecution claim). Although timing alone is insufficient to create a presumption of vindictiveness, *see United States v. Trump*, No. 23-257, 2024 WL 3638344 at *7 (D.D.C. Aug. 3, 2024), it can be a strong indicator that a prosecution was brought for an improper purpose, *see Dwyer*, 287 F. Supp. 2d at 89.

In *United States v. Abrego Garcia*, 833 F. Supp. 3d 811, 814 (M.D. Tenn. 2026), the Department of Homeland Security reopened its investigation ("***HSI***") into a traffic stop of Mr. Abrego Garcia days after Mr. Abrego Garcia obtained a favorable ruling from the Supreme Court regarding his removal from the country. A month later, the Government indicted Mr. Abrego Garcia for allegedly conspiring to transport and transporting noncitizens. *Id.* The court found, "[t]he timing of HSI's closing and subsequent reopening of the investigation into Abrego's November 2022 traffic stop is telling and forceful." *Id.* at 827. The timing between when SGO brought its defamation cases and was charged is less striking than the timing in *Abrego Garcia*. But it is telling that the Government chose not to indict SGO originally, that SGO was charged only after President Trump reassumed office and after SGO had been cooperating with the Government for years, and that the Government has presented no evidence adduced between the First and Superseding Indictments warranting SGO's addition as a defendant.

Third, a vindictive prosecution claim may be supported by the Executive, prosecutor, or law enforcement's stated positions, even when they do not explicitly admit that the case was brought against the defendant for an improper purpose. *See Carey*, 816 F. Supp. 3d at 144. In *Carey*, the court found sufficient evidence to order discovery into the defendant's vindictive prosecution claim because his arrest for violating park regulations followed "an executive order directing prosecutors to find charges to pin on

flag burners." *Id.* The Court finds probative not just that President Trump signed an executive order regarding FCPA enforcement but also that President Trump has personally expressed animus towards SGO regarding election interference. Indeed, President Trump's confederates were sued by SGO for making false claims regarding SGO's role in interfering with the 2020 presidential election that President Trump lost.

Some of the evidence relevant to SGO's vindictive prosecution claim is also relevant to its selective prosecution claim. Evidence of a discriminatory motive need not be class-based, *see United States v. Torquato*, 602 F.2d 564, 569 n.9 (3d Cir. 1979), and a claim may be supported by political animus, *see United States v. Navarro*, 627 F. Supp. 3d 1, 4 (D.D.C. 2022) ("A forbidden reason can include prosecution of a defendant based on his political beliefs.") (citation and quotation marks omitted).

Additionally, evidence of discriminatory intent may include animus towards both an individual and a class to which the individual belongs. *See Jones*, 159 F.3d at 977. In *Jones*, the Sixth Circuit considered whether Mr. Jones was entitled to discovery relating to his selective prosecution claim based on a mix of personally and racially charged conduct on the part of the police department. *Id.* The court found that Mr. Jones proved that racial animus motivated his prosecution, stressing that police sent him "a racially charged postcard" and wore custom t-shirts emblazoned with his face when arresting him. *Id.* at 977 n.7. The court also found that Mr. Jones did not "establish that law enforcement failed to refer similarly situated non-African-Americans for federal prosecution." *Id.* at 977. Nonetheless, he "set forth 'some evidence' tending to show the existence of discriminatory effect that warrants discovery" by presenting evidence of eight non-African-Americans who were arrested for offenses involving crack cocaine – a category of offense

for which Mr. Jones was prosecuted – who were not referred for federal prosecution. *Id.* at 978.

Similarly, President Trump's stated animus towards those who "rigged" the election, including his reposted content about Smartmatic, suggests a possible discriminatory intent that is both personal and political. The Government's decision to indict SGO against the backdrop of its revised FCPA policies, including its dismissals of the *Gordon Coburn* and *Adani* cases,[19] is probative as well. *C.f. United States v. Al Jibori*, 90 F.3d 22, 26 (2d Cir. 1996) (remanding for discovery into selective prosecution claim after Government produced affidavit saying decision to prosecute was based on defendant's similarity to another defendant, where the only non-superficial, "established commonality between [them was] their national (or regional) origin, a consideration which standing alone is an unconstitutional basis for selecting prosecution[]").

## IV. CONCLUSION

After evaluating the totality of the circumstances in this case, the Court has concluded that limited discovery regarding SGO's Motion to Dismiss is warranted. The reasons set forth in open court and the factors outlined above all weigh in favor of granting this limited discovery. In short, there is "some evidence" tending to support SGO's Motion to Dismiss: the individual Defendants were charged over a year prior to when the Superseding Indictment against SGO was returned; for years prior to the initiation of this

[19] It should be noted that the Adani matter demonstrates that at least one of these dismissal decisions was made by a high ranking official of the Department of Justice. Notice re Response to Court's June 26 Order at 10 n.3, *Adani*, No. 1:24-cr-00433 (E.D.N.Y July 4, 2026), DE 37; Notice at 1, *Adani*, No. 1:24-cr-00433 (E.D.N.Y Aug. 14, 2026), DE 56. Consequently, the Court is expanding the scope of materials to be produced here (from the those announced on the record at the September 16, 2026 status conference) to include Department of Justice personnel.

case and up until the Superseding Indictment was returned, SGO was cooperating with the Government; the Government charged SGO amidst a public shift away from charging defendants for similar FCPA violations; SGO brought suit against the President's confederates prior to being charged; and the President has expressed at least some degree of animus towards SGO. "It may well be that no fire will be discovered under all the smoke, but there is enough smoke here . . . to warrant the unusual step of . . . find[ing] out how this unusual prosecution came about." *Adams*, 870 F.2d at 1146.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion (DE 406) is **GRANTED IN PART AND DENIED IN PART**.
2. On or before November 17, 2026, the Government shall provide the Court with the following for **ex parte and in camera review under seal**:
    a. The prosecution memoranda regarding the initial indictment in this case and the subsequent Superseding Indictment of SGO;
    b. All communications, including emails, memoranda, and correspondence, between the Department of Justice – including principals and personnel in the Offices of the Attorney General, the Associate Attorney General, the Deputy Attorney General, and the Principal Deputy Attorney General – and former Acting United States Attorney Hayden O'Byrne, United States Attorney Jason Reding Quiñones, and any member of the past and present prosecution team relating to or discussing the decision to charge SGO and when to charge SGO from January 1, 2025 to October 16, 2025; and
    c. Any emails sent by either former Acting United States Attorney Hayden

O'Byrne or United States Attorney Jason Reding Quiñones to SGO's former and current counsel from January 1, 2025 to October 16, 2025.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 3rd day of November, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE